ERVIN, Chief Judge,
specially concurring.
The court’s opinion does not discuss appellants’ arguments regarding substantive defects in the application for the wiretap or reveal the factual context of the case. Although I concede that appellants have advanced substantial arguments supporting their appeal from the denial of their motion to suppress, I nevertheless concur in the affirmance because I consider the application taken as a whole demonstrates sufficient adherence to the statutory safeguards.
This case involves surveillance by law enforcement officers of occupants of a Gainesville residence suspected of dealing in controlled substances. The narcotics officers “tailed” appellant Duckham to his place of employment where undercover Officer Joll thereafter made Duckham’s acquaintance and engaged him in conversations relating to drugs. Later, following inquiries made by Joll to Duckham, Duck-ham advised him that he could obtain co *1057 caine and gave him the phone number of the residence Duckham shared with appellant Waymire. Joll subsequently made tape-recorded telephone calls to Duckham on November 3, 5, 6 and 8 for the purpose of setting up a cocaine purchase. Joll went to the Duckham/Waymire residence on November 9 to complete the purchase, and while he was there, Duckham telephoned appellant Parker, who arrived shortly afterward with a one-quarter ounce sample of cocaine. Upon Joll’s approval of the sample and his display of the money to Duckham, Parker left and returned several minutes later with another half-ounce of cocaine. During this visit, Joll wore a body bug which transmitted the transaction to officers outside who observed Parker’s arrivals and departures from the Duck-ham/Waymire residence, but who made no attempts to follow Parker. Four days later, the officers, based on the transaction of November 9, applied for and received an order allowing a wiretap to be placed on the telephone at the Duckham/Waymire residence.
On November 23, Joll made a second controlled buy from Duckham at his residence under circumstances similar to those before, except that during the second buy, police officers were standing by at Parker’s house when Duckham telephoned Parker. These officers followed Parker to another residence which later was determined to belong to one Leavitt, then to Duckham’s, then back again to Leavitt’s, and finally to Duckham’s. During the first buy, Joll was not introduced to Parker or others present in the house, but during the second buy, Parker did introduce himself to Joll. The officers were particularly interested in making a case against Waymire, who they had learned from police records had been arrested previously for marijuana violations. Consequently, at a time Joll knew Duckham to be out of town, he telephoned the Duckham/Waymire residence and prevailed upon Waymire to sell him cocaine. Although the sale occurred, no recording or surveillance was made other than the wiretap recording of Joll’s phone call to Way-mire. On the basis of the Duckham/Way-mire wiretap and the surveillance of Parker on November 23, a wiretap was obtained for Parker’s phone, and, based on a phone call from Parker’s phone to Leavitt during a later controlled buy and surveillance of Parker’s receipt of cocaine from Leavitt’s house, a wiretap was then placed on Leav-itt’s phone.
The state has stipulated that if the Duck-ham/Waymire wiretap is invalid, then the Parker and Leavitt wiretaps are likewise invalid. Appellants contend that the application for the wiretap on the Duck-ham/Waymire telephone was deficient in providing a full and complete statement about other investigative procedures as required by Section 934.09(l)(c), Florida Statutes (1981).[1]
Chapter 934, Florida Statutes, authorizing interception of wire or oral communications, is a statutory exception to the federal and state constitutional provisions relating to a right to privacy and therefore must be strictly construed and narrowly limited in application. In Re Grand Jury Investigation, 287 So.2d 43, 47 (Fla.1973). The statutory requirement is imposed as a safeguard to ensure against resort to wiretapping in situations where traditional techniques would sufficiently expose the crime, although it is not necessary to show a comprehensive exhaustion of all possible techniques. Daniels v. State, 381 So.2d 707 (Fla. 1st DCA 1979).
*1058 Appellants specifically challenge the representation in the application that “moving surveillances have had only a limited investigative value up to this point in the investigation.” While this item in the application’s list of other investigative procedures is admittedly conclusory and non-factual, when it is taken into consideration with the other seven techniques also listed in the application that had been tried without success or were likely to fail, it is evident that this wiretap authorization was not routinely requested as an initial step in the criminal investigation. Scheider v. State, 389 So.2d 251, 252 (Fla. 1st DCA 1980). Appellants contend that use of moving surveillance and other untried methods would have precluded the need for a wiretap if they had indeed been attempted. For us to so conclude would amount to a judgment call on the facts, and since the trial court’s ruling on the motion to suppress comes to this appellate court clothed with a presumption of correctness, we should interpret the evidence, and all reasonable inferences and deductions capable of being drawn therefrom, in the light most favorable to sustain the trial court’s conclusion. Segal v. State, 353 So.2d 938, 939 (Fla. 3rd DCA 1978). For this reason, I agree with the majority’s decision to affirm as to this point assailing the application.
The majority’s opinion did address appellants’ argument regarding the absence of the identity on the application itself of the officer authorizing the application required by section 934.09(l)(a).[2] Although I agree that we should also affirm as to this issue, I would only add that, in recognizing the dangers inherent in this investigative technique, the statutory requirements should be strictly construed. In this case, the submission of the application, together with the authorization and the filing of the two documents before the circuit judge, effected the safeguard intended by the statute that such applications be submitted only upon the proper authority. Under such circumstances, I agree to affirm.

. Section 934.09(l)(a), (c) states:
(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant’s authority to make such application. Each application shall include the following information:
(a) The identity of the investigative or law enforcement officer making the application and the officer authorizing the application; ******
(c) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

. See note 1, supra.